**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| Jessika Highers,<br><br>            Plaintiff,<br>       v.<br><br>BriteLife Recovery at Hilton Head, LLC,<br><br>            Defendant. | Case No. 9:21-cv-03860-RMG<br><br>**ORDER AND OPINION** |

This matter is before the Court on the Report and Recommendation ("R & R") of the Magistrate Judge, recommending that Defendant's motion to dismiss be granted in part and denied in part. (Dkt. No. 23). Plaintiff filed an objection to the R & R, (Dkt. No. 25), and Defendant replied, (Dkt. No. 29). For the reasons set forth below, the Court adopts-in-part and rejects-in-part the R & R.

**I.     Background**

This case arises out of Plaintiff's former employment with Defendant. (Dkt. No. 8 ¶¶ 1-7). Plaintiff was employed as a Substance Abuse Therapist at Defendant's drug and alcohol rehabilitation center. (*Id.*, ¶ 14). According to Plaintiff, Defendant did not follow proper COVID-19 safety protocols. (*See id.*, ¶¶ 35-43). Plaintiff alleges she tested positive for COVID-19 following a work exposure. (*Id.*, ¶ 44, 45). As a resident of Georgia, Plaintiff was required to quarantine for 14 days under Georgia law at the time. (*Id.*, ¶ 45). Plaintiff claims she was required to use her accumulated Paid Time Off for this mandatory quarantine. (*Id.*, ¶ 50). After her quarantine period, Plaintiff filed a related Worker's Compensation Claim. (*Id.*, ¶ 53). Shortly after filing her COVID-19 related Worker's Compensation Claim, Plaintiff allegedly observed the Clinical Director of Defendant's facility treat a patient by placing his hands on the patient's neck

to simulate the patient's trauma. (*Id.*, ¶ 54). Plaintiff immediately reported this incident. (*Id.*, ¶ 55). Plaintiff was terminated three days after the alleged incident took place. (*Id.*, ¶¶ 56, 62).

Based on these allegations, Plaintiff initiated this action asserting the following causes of action: (1) violation of the Fair Labor Standards Act, as amended by the Families First Coronavirus Response Act; (2) violation of the Americans with Disabilities Act; (3) negligence per se; (4) wrongful termination in violation of public policy; and (5) negligent supervision and negligent retention. (*Id.*, ¶¶ 66-136). Defendant seeks to dismiss the first, third, fourth, and fifth causes of action. (Dkt. No. 10). Plaintiff filed a response in opposition, (Dkt. No. 16), and a stipulation of dismissal with prejudice as to the fourth cause of action, (Dkt. No. 17). Defendant replied (Dkt. No. 22). The Magistrate Judge issued an R & R granting in part and denying in part Defendant's motion (Dkt. No. 23). Specifically, the Magistrate Judge recommends that Plaintiff's third cause of action for negligence per se and fifth cause of action for negligent supervision and negligent retention be dismissed. (*Id.* at 21). Plaintiff objected to the R & R as to the third and fifth cause of actions, (Dkt. No. 25), and Defendant replied, (Dkt. No. 29).

**II.     Standard**

   **A. Report and Recommendation**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate judge with

instructions." *Id.* Where the plaintiff fails to file any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation," *see Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted), and this Court is not required to give any explanation for adopting the recommendation of the Magistrate Judge, *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983).

### B. Motion to Dismiss Under Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully."

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. Discussion

#### A. First Cause of Action: Fair Labor Standards Act, as Amended by the Families First Coronavirus Response Act

Plaintiff alleged that Defendant violated the Fair Labor Standards Act ("FLSA"), as amended by the Families First Coronavirus Response Act ("FFCRA"), by requiring Plaintiff to use PTO for her required quarantine period. (Dkt. No. 8, ¶¶ 66-79). The FFCRA created the Emergency Paid Sick Leve Act ("EPSLA), which prohibits employers from requiring an employee to first use other paid leave before providing the emergency sick leave required under the EPSLA. FFCRA, Sec. 5102(a). The EPSLA excludes "health care provider[s]" from its coverage. *Id.* Defendant argued that Plaintiff was excluded from the coverage because she qualified as a "health care provider." (Dkt. No. 23 at 9). The Magistrate Judge has provided a well-reasoned analysis of Plaintiff's EPSLA claim and determined that, based on the facts alleged in the complaint, Plaintiff does not fall under EPSLA's "health care provider" definition. (*Id.* at 4-12). The Court here agrees that, based on the facts alleged in the complaint, Plaintiff's duties and responsibilities did not meet the regulatory definition of "health care provider." Accordingly, Defendant's motion to dismiss Plaintiff's first cause of action is denied.

#### B. Third Cause of Action: Negligence Per Se

Plaintiff alleged that Defendant was negligent per se because Defendant violated "state and federal statutes and regulations concerning safe workplaces for employees and rules for proper personal protective equipment ("PPE"), cleaning/disinfecting, and requiring employees who were in close proximity or contact with a COVID-19 positive co-worker to quarantine for ten (10) to

4

fourteen (14) days after the last date of exposure." (Dkt. No. 8, ¶ 97). Defendant argued that Plaintiff's claim is barred by the exclusivity provision of the South Carolina Workers' Compensation Act ("the Act"), S.C. Code Ann. § 42-1-540. (Dkt. No. 23 at 13).

The exclusivity provision states the following:

> The rights and remedies granted by this title to an employee when he and his employer have accepted the provisions of this title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee . . . as against his employer, at common law or otherwise, on account of such injury, loss of service or death.

S.C. Code Ann § 42-1-540. "Injury" and "personal injury," as used in the Act, "mean only injury by accident arising out of and in the course of employment and shall not include a disease in any form, except when it results naturally and unavoidably from the accident and except such diseases as are compensable under the provisions of Chapter 11 of this title." When "determining whether something constitutes an injury by accident the focus is not on some specific even, but rather on the injury itself." *Pee v. AVM, Inc.*, 352 S.C. 167, 171, 573 S.E.2d 785, 788 (S.C. 2002) (quoting *Stokes v. First Nat'l Bank*, 306 S.C. 46, 50, 410 S.E.2d 248, 250 (1991)). "Further an injury is unexpected, bringing it within the category of accident, if the worker did not intend it or expect it would result from what he was doing." *Pee*, 352 S.C. at 171, 573 S.E.2d at 788 (citing *Colvin v. E.I. DuPont De Nemours Co.*, 227 S.C. 465, 88 S.E.2d 581 (1955)).

The issue here is whether Plaintiff's contracting of COVID-19 falls within the Act's general definition of injury such that Plaintiff's negligence per se claim is barred by the exclusivity provision.

The Magistrate Judge concluded that Plaintiff's contracting of COVID-19 is an "injury." (Dkt. No. 23 at 14.) The Magistrate Judge reasoned that, according to Plaintiff's allegations, Plaintiff's COVID-19 infection resulted "naturally and unavoidably" from an accidental exposure

at work to a COVID-19 positive employee. (*Id.*) The Magistrate Judge further reasoned that there were no allegations from which to infer the Plaintiff expected to contract COVID-19 at work and that Plaintiff's allegations suggested she did not expect to contract COVID-19 at work. (*Id.* at 15). For example, Plaintiff alleged that she was careful to use PPE to avoid exposure to COVID-19 and that she did not know until after the exposure that another employee had been diagnosed with COVID-19. (*Id.*)

In her objection, Plaintiff argued that it was "not unexpected" that she would contract COVID-19 at work given Defendant's alleged failure to follow state and federal guidelines. (Dkt. No. 25 at 4). Plaintiff argues that she expected to contract COVID-19 because she complained numerous times to management about Defendant's disregard for COVID-related safety guidelines. (Dkt. No. 25 at 5).

After reviewing the amended complaint and considering Plaintiff's objection, the Court here, viewing the allegations in the light most favorable to Plaintiff, finds that Plaintiff's contracting of COVID-19 is not an "injury" under the definition of the Act. Allegations regarding Plaintiff's complaints to management about Defendant's disregard for COVID-19 guidelines and allegations regarding Plaintiff's careful behavior, such as wearing PPE and providing free masks to staff, allow the Court to reasonably infer that Plaintiff expected to contract COVID-19 at work. Accordingly, Defendant's motion to dismiss Plaintiff's third cause of action is denied.

C. **Fifth Cause of Action: Negligent Retention and Supervision**

Plaintiff's fifth cause of action is a state-law claim for negligent supervision and negligent retention. (Dkt. No. 8, ¶¶ 123-135). Defendant moves to dismiss this cause of action, arguing that the claims is barred by the Act's exclusivity provision. (Dkt. No. 10-1 at 7-11). Plaintiff argues that exceptions to the exclusivity provision apply to her negligent retention and negligent

6

supervision claim. (Dkt. No. 16 at 16-15). Plaintiff also argues that her claim is not subject to the exclusivity provision because she alleges a mental injury that is not compensable under the Act. (*Id.* at 16-17). The Magistrate Judge concluded that the exclusivity provision does apply to Plaintiff's claim and that no exceptions apply. (Dkt. No. 23 at 21).

### 1. Exceptions to South Carolina's Worker's Compensation Act's Exclusivity Provision

South Carolina courts have held that South Carolina's Workers' Compensation Act provides the exclusive remedy for an employee's claims of negligent supervision and negligent retention arising out of and in the course of the employee's employment. *Brown v. IQor U.S. Inc.*, No. 2:14-cv-2638, 2015 WL 1351491, at *4 (D.S.C. Mar. 24, 2015) (collecting cases). There are four exceptions to the Act's exclusivity provision: (1) where the injury results from the act of a subcontractor who is not the injured person's direct employer; (2) where the injury is not accidental but rather results from the intentional act of the employer or its alter ego; (3) where the tort is slander and the injury is to reputation; (4) where the Act specifically excludes certain occupations. *Cason v. Duke Energy Corp.*, 348 S.C. 544, 548, 560 S.E.2d 891, 893 n.2 (S.C. 2002).

The Magistrate Judge has provided a well-reasoned analysis on the second and third exceptions to the exclusivity provision. (Dkt. No. 23 at 17-19). For the second exception, Plaintiff argued that Director of Client Services Meagan Baumann and Clinical Director David Gibbs were "alter egos" of Defendant that committed intentional injurious conduct. (Dkt. No. 16 at 15-16). The Magistrate Judge concluded that Baumann and Gibbs were not "alter egos" of Defendant. (Dkt. No. 23 at 19). The Magistrate Judge reasoned that Plaintiff's allegations were only sufficient to show that Baumann and Gibbs were supervisory employees and not sufficient to show that they were "dominate corporate owners" or "officers" as required under South Carolina law. (*Id.* at 17-18). And for the third exception, the Magistrate Judge noted that the slander exception to the

7

exclusivity provision only applies to defamation or slander claims and that Plaintiff did not allege a defamation or slander claim in her amended complaint. (*Id.* at 19). Accordingly, the Magistrate concluded that the slander exception did not apply to Plaintiff's negligent supervision and negligent retention claim. (*Id.*)

Plaintiff only objected to the Magistrate's recommendation on the second exception. (Dkt. No. 25 at 5-6). Plaintiff argued that her allegations show that Gibbs and Baumann were officers according to it's plain and ordinary meaning. (*Id.* at 6). For the plain and ordinary meaning, Plaintiff employed Black's Law Dictionary's definition of officer, "a person elected or appointed by the board of directors to manage the daily operations of a corporation, such as a CEO, president, secretary or treasurer." (*Id.* (quoting *Officer*, BLACK'S LAW DICTIONARY (9th ed. 2009)). Plaintiff argues that her allegations calling Gibbs and Baumann "members of management" are sufficient to infer that they are "officers" whose intentional conduct is subject to an exception to the exclusivity provision. (Dkt. No. 25 at 6).

After reviewing the record and considering Plaintiff's objection, the Court here agrees that the exceptions to the exclusivity provision do not apply to Plaintiff's claim. The Magistrate correctly noted that the allegations are insufficient to support an argument that Gibbs and Baumann are Defendant's alter ego. Merely alleging that Gibbs and Baumann are "members of management" is not enough for the Court to draw a reasonable inference that they are officers of Defendant. Additionally, the Magistrate Judge correctly noted that the slander exception only applies to slander or defamation causes of action and is thus not available here.

### 2. Mental Injuries under South Carolina's Workers' Compensation Act

Mental injuries caused by emotional stress, or 'mental-mental' injuries, are compensable under South Carolina's Workers' Compensation Act if the injury was the result of unusual and

extraordinary conditions during the employment. *See Tennant v. Beaufort County School Dist.*, 381 S.C. 617, 621, 674 S.E.2d 488, 490 (S.C. 2009). Abusive, aggressive, threatening, triggering, or hostile conduct is not considered ordinary incidents of employment even if the conduct persisted through an extended period. *See Dickert v Metropolitan Life Ins. Co*, 311 S.C. 218, 221, 428 S.E.2d 700, 702 (S.C. 1993).

The Magistrate Judge provided a well-reasoned analysis regarding Plaintiff's argument that the alleged mental-mental injury is not subject to South Carolina's Workers' Compensation Act. (Dkt. No. 23 at 19-20). Plaintiff argued that the alleged conduct was not unusual or an extraordinary circumstance of employment with Defendant. (Dkt. No. 16 at 17). The Magistrate Judge noted that South Carolina courts have found the alleged conduct not ordinary even if it occurred frequently at a particular place of work. (Dkt. No. 23 at 20). The Magistrate Judge concluded that, because the conduct is not ordinary, Plaintiff's mental injury is covered by the Act.

After reviewing the record and considering Plaintiff's objection, the Court here agrees that, as alleged, Plaintiff's mental injury is subject to the Act and its exclusivity provision. The Magistrate Judge correctly concluded that the alleged conduct is not considered ordinary under the Act. Accordingly, Defendant's motion to dismiss Plaintiff's fifth cause of action is granted.

## IV. Conclusion

For the foregoing reasons, the Court **ADOPTS-IN-PART** and **REJECTS-IN-PART** the Report and Recommendation of the Magistrate Judge (Dkt. No. 23). Accordingly, Plaintiff's fifth cause of action for negligent supervision and negligent retention is **DISMISSED**. Plaintiff's first, second, and third causes of action remain. **AND IT IS SO ORDERED**.

                                                     s/ Richard Mark Gergel
                                                    Richard Mark Gergel
                                                    United States District Judge

September 8, 2022
Charleston, South Carolina